**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LINDA HEUSCHKEL,          :   Civil Action No. 05-5312(NLH)
                               :
                               :
         Plaintiff,     :
                               :
     v.                :   **OPINION**
                               :
JACK L. MCCULLEY and       :
THE STERLING HIGH SCHOOL    :
DISTRICT BOARD OF EDUCATION,  :
                               :
         Defendants.    :
                               :

**APPEARANCES:**

F. Michael Daily, Jr., Esquire
Sentry Office Plaza
216 Haddon Avenue
Suite 100
Westmont, NJ 08108

    *Attorney for Plaintiff*

Lisa S. Grosskreutz, Esquire
Parker, Mccay
Route 73 & Greentree Road
Suite 401
Marlton, NJ 08053

    *Attorney for Defendant*s

**HILLMAN**, District Judge

    This matter has come before the Court on defendants' motion for summary judgment on plaintiff's claims of retaliation and discrimination because of her gender.  For the reasons expressed below, defendants' motion will be granted.

**BACKGROUND**

Plaintiff, Linda Heuschkel, has been employed as a health and physical education teacher by the defendant Sterling High School District Board of Education since 1981, and in due course, plaintiff was granted tenure.  During her time at Sterling, plaintiff has served as vice-president and president of the Sterling Education Association ("SEA"), a union representing Sterling teachers in the collective bargaining process.  As an officer of the SEA, plaintiff "has been an advocate of the rights of all union members, both male and female."  (Compl. ¶ 14.)

Plaintiff alleges that defendants have discriminated and retaliated against her because of her gender, as well as because of her advocacy of union members in their discrimination claims against the school district.  Plaintiff also claims that defendants have violated her First Amendment rights.  Defendants have moved for summary judgment on plaintiff's discrimination and retaliation claims.  Plaintiff has opposed defendants' motion.

**DISCUSSION**

**A.   Jurisdiction**

Plaintiff has brought her claims pursuant to 42 U.S.C. §§ 1983 and 1988, as well as pursuant to the New Jersey constitution and the New Jersey Law Against Discrimination.  This Court has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law

2

claims under 28 U.S.C. § 1367.

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has

3

met this burden, the nonmoving party must identify, by affidavits
or otherwise, specific facts showing that there is a genuine
issue for trial.  Id.  Thus, to withstand a properly supported
motion for summary judgment, the nonmoving party must identify
specific facts and affirmative evidence that contradict those
offered by the moving party.  Anderson, 477 U.S. at 256-57.  A
party opposing summary judgment must do more than just rest upon
mere allegations, general denials, or vague statements.  Saldana
v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Plaintiff's complaint makes a general allegation that
defendants' actions "were taken on account of her gender."
(Compl. ¶ 48.)  She also makes an allegation that she was
retaliated against because of her gender-based protected
activities.  (Id.)  Plaintiff's retaliation claim will be
addressed first.

**1.   Whether defendants retaliated against plaintiff**

Plaintiff claims that she was retaliated against in two
specific ways because of her gender and because of her advocacy
of her own and her co-workers' discrimination claims.  One
alleged retaliatory act by defendant is a written reprimand
plaintiff was issued because of an email plaintiff sent to a male
co-worker via the Sterling High School email system following a
SEA meeting on November 9, 2004.  According to plaintiff, at that

meeting a male union member, Chris Carpenter, "expressed criticism and displeasure in the Executive Committee of the union, a committee upon which the plaintiff served." (Compl. § 18.) The next day, plaintiff sent Carpenter an email on the school's email system setting forth "her views on the union issues which had been raised by the dissident member and stated in part, 'I considered your views and actions as a form of union busting, while hypocritically asking to be represented by the same contract you have undermined.'" (Id. § 19.)

After receiving this email, Carpenter filed a complaint with Superintendent Jack McCulley and the Board of Education. As a result of Carpenter's complaint, a hearing was conducted by Superintendent McCulley on December 7, 2004. McCulley ordered: 1) that plaintiff was only permitted to use the school email system for instruction and school related communication; 2) plaintiff must understand that views or opinions that question one's integrity, professionalism and credibility are not acceptable; 3) the interpretation of the email could be considered slanderous; and 4) using words which insinuate a lack of integrity or professionalism could be considered as an attempt to deprive Carpenter of his livelihood. (Id. § 23.)

Plaintiff refused to accept McCulley's decision and appealed to the school board. A full hearing was held on January 26, 2005, and at the conclusion of the hearing, the board reserved

decision on the matter.  On September 8, 2005, plaintiff received the final written decision of the board regarding to Carpenter's complaint,[1] and the board directed that plaintiff was to use the school's email system only for instruction or school related communications, and that she was to "conduct herself in a professional manner in communicating with other professional and non-professional staff members."  (Id. Ex. B.)  Plaintiff was also "reminded that unprofessional conduct and personal views or opinions that infringe upon others in this school will not be tolerated."  (Id.)  Plaintiff claims that this decision was placed in her personnel file, where it could serve as a future basis for progressive discipline.  (Id. § 31.)

The other retaliatory act alleged by plaintiff is the fact that she did not receive her salary increment adjustment for the 2006/2007 school year.  As more fully explained below, following a series of complaints by parents about plaintiff's grading methods, as well as conversations with Sterling administrators about the issue, Superintendent McCulley determined that plaintiff's salary adjustment for 2006/2007 would be withheld. Plaintiff claims that this withholding of her salary adjustment,

---

[1]Plaintiff did not receive a written decision until September 8, 2005 because even though McCulley states in this letter that he believed that plaintiff and Carpenter had received a written decision of the board soon after the January 25, 2005 hearing, he could not find a copy of that correspondence in the file.  McCulley prepared the September 8, 2005 letter at the request of plaintiff.

as well as her reprimand for the email, were in retaliation for becoming a "thorn in the side of defendants" with regard to advocating claims, of hers and others, against the district for gender discrimination.

A claim of retaliation under the New Jersey Law Against Discrimination ("NJLAD") uses the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1974). See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087-88 (3d Cir.1996) (holding that unlawful discrimination claims under the NJLAD "parallel" Title VII claims and therefore employ the same McDonnell Douglas framework). Under that framework, a plaintiff must first establish a *prima facie* case. To establish a *prima facie* case for a retaliation claim under the NJLAD, plaintiff must show: (1) she engaged in protected employee activity; (2) the employer took adverse action against her after, or contemporaneous with, her activity; and (3) a causal link exists between her activity and the employer's action against her. Muzslay v. City of Ocean City, 238 Fed.Appx. 785, 789 (3d Cir. 2007) (citing Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001)).

Should plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. "The employer satisfies its burden of

7

production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). This is a light burden.  Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of persuasion. Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 2097 (2000)).

Defendants argue that plaintiff cannot establish a *prima facie* case of retaliation.  With regard to the reprimand for the email, they contend that plaintiff did not suffer an adverse employment action.  With regard to the denial of her salary increment, defendants argue that there is no causal connection between any of her protected activity and the withholding of her salary adjustment.  Defendants also argue that even if plaintiff

could establish a *prima facie* case, plaintiff does not have any evidence to support that the reasons for the reprimand and denial of her salary adjustment were a pretext.

The first element of plaintiff's *prima facie* case is whether she engaged in protected activity.  In addition to instituting lawsuits, filing affirmative action complaints, and participating in litigation, other examples of protected activity are "making complaints to management," "writing critical letters," "protesting against discrimination," and "expressing support of co-workers." Montanye v. Wissahickon School Dist., 218 Fed. Appx. 126, 131 (3d Cir. 2007) (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).  Here, plaintiff claims that defendants' retaliatory acts arose from seven events. First is her involvement in two gender discrimination claims filed by female co-workers in 1995 or 1996.  In one, plaintiff wrote a letter of recommendation for a female adjunct field hockey and softball coach who was applying for a varsity coaching position.  That female coach filed a claim against the district alleging that she was denied the varsity position because of her gender.  In the other, plaintiff believes that she was named as a potential witness in a claim by a female co-worker for sex discrimination.  That claim was settled without plaintiff's involvement.

Second is the filing of an internal grievance in 1996 with

regard to tuition reimbursement.  Third is the filing of her own
gender discrimination claim with the EEOC in January 1997 with
regard to the tuition reimbursement claim.  The EEOC issued a
finding of no probable cause in her case.

Fourth is her January 5, 1998 memo to the athletic director
questioning why only male coaches were approved to supervise the
weight room.  Fifth is her September 2004 questioning of the use
of physical fitness equipment by non-physical fitness classes.
Sixth is her November 24, 2004 affirmative action complaint, and
seventh is the filing of this lawsuit in November 2005.
Defendants do not dispute that plaintiff engaged in protected
activity.

The second element of plaintiff's *prima facie* case is
whether she suffered an adverse employment action.  "The Supreme
Court has defined a tangible employment action as a significant
change in employment status, such as hiring, firing, failing to
promote, reassignment with significantly different
responsibilities, or a decision causing a significant change in
benefits."  Durham Life Ins. Co. v. Evans, 166 F.3d 139, 152-53
(3d Cir. 1999) (citation and quotations omitted).  Defendants do
not challenge that the denial of plaintiff's salary adjustment
could be considered an adverse employment action, but defendants
argue that the reprimand for the email does not constitute an
adverse employment action.  Generally, a written reprimand, where

10

a plaintiff has failed to establish how the reprimand effected a material change in the terms or conditions of her employment, does not constitute adverse employment actions.  See Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001).  Here, plaintiff has not shown how the written reprimand for her email materially changed her employment terms or conditions.  She has only made the unsupported statement that the reprimand could be used in future progressive discipline, and plaintiff does not claim that the reprimand has been used as a basis for progressive discipline.  As such, the written reprimand does not constitute an adverse employment action.

The third element of plaintiff's *prima facie* case is whether the adverse action was causally related to her protected activity.  As a primary matter, plaintiff has failed to show a causal connection between all the events prior to 2001 and the January 2005 reprimand (if it were to be considered an adverse employment action) and the 2006 denial of her salary adjustment. Defendant Superintendent McCulley was not employed by the Sterling District Board of Education prior to 2001, and plaintiff has not demonstrated that the school board constituted the same members in 2001 as in 1996-1998.  Indeed, plaintiff testified that she believes that the board membership changed.  (See Def. Ex. G at 85-101.)

Recognizing this problem, plaintiff argues that McCulley and

11

the board as of 2001 knew of plaintiff's history, and used this history against her.  Plaintiff, however, has not provided any evidence to support this argument.  Consequently, plaintiff has failed to show a causal connection between her protected activity prior to 2001 and the reprimand and denial of the salary adjustment.

With regard to plaintiff's September 2004 questioning of the use of physical fitness equipment by non-physical fitness classes, the November 24, 2004 affirmative action complaint, and the filing of this lawsuit in November 2005, only the September 2004 activity could be implicated for the reprimand (if it were to be considered an adverse employment action), since the other two events occurred after the reprimand.  Plaintiff has not provided any evidence that the questioning of the use of the physical fitness equipment had anything to do with the reprimand about her email.

With regard to the questioning of the use of physical fitness equipment and the affirmative action complaint in 2004, and the filing of this lawsuit in 2005, plaintiff cannot prove the causal element of her *prima facie* case because temporal proximity between those events and the denial of her salary adjustment is lacking.  Temporal proximity that is "unduly suggestive" satisfies the causation element of a plaintiff's *prima facie* case at the summary judgment stage.  <u>Farrell v.</u>

Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000));

see also Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir.

2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d

Cir. 2003)("Even if timing alone could ever be sufficient to

establish a causal link, . . . the timing of the alleged

retaliatory action must be unusually suggestive of retaliatory

motive before a causal link will be inferred.")).  Using time to

satisfy the causation element of the *prima facie* case, however,

requires consideration "with a careful eye to the specific facts

and circumstances encountered."  Farrell, 206 F.3d at 279 (citing

Kachman v. SunGard Data Sys., 109 F.3d 173, 178 (3d Cir. 1997)).

"There is clearly a difference between two days and nineteen

months."  Id. (citations omitted); see also Williams v.

Philadelphia Housing Authority Police Dept., 380 F.3d 751, 760

(3d Cir. 2004) (holding that two months was not "unduly

suggestive"); Thomas, 351 F.3d at 114 (holding that three weeks

was not "unduly suggestive").

     Here, at least a year passed between the September 2004

questioning of the use of physical fitness equipment by non-

physical fitness classes, the November 24, 2004 affirmative

action complaint, the filing of this lawsuit in November 2005,

and the denial of her salary adjustment.  This period of time,

without more, does not make defendants' adverse employment action

unduly suggestive of a retaliatory motive.

Recognizing this deficiency, plaintiff also argues that a pattern of antagonism demonstrates the causal link between the denial of her salary adjustment and her protected activities.  It is true that the causal link may also be established by proof that the employer "'engaged in a pattern of antagonism in the intervening period.'"  Valdes v. Union City Bd. of Educ., 186 Fed. Appx. 319, 324 (3d Cir. 2006) (quoting Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997)).  Plaintiff argues that the pattern of antagonism started in 1996 when she complained to defendants about discrimination against her and others.  (Pl.'s Br. at 6.)  It continued in 1998 with plaintiff reporting the issue about females not being appointed to weight room duties.  (Id.)  From there, "things seemed to calm down a bit," but in 2004, plaintiff again "raised the ugly specter of discrimination" by raising the issue of a male faculty member wearing shorts.  (Id.)  Finally, plaintiff makes the claim that in 2005 McCulley told her that "he didn't get mad, he got even." (Id.)

The problem with plaintiff's claimed pattern of antagonism is that it does not demonstrate how defendants antagonized her. Without making any findings as to the veracity of plaintiff's complaints, a pattern of antagonism must demonstrate what defendants did on an ongoing basis to antagonize plaintiff. Instead, plaintiff's alleged pattern arguably shows how she

14

"antagonized" them.  Perhaps plaintiff's vocal advocacy was a "thorn in the side" of defendants (see Pl.'s Br. at 1), and being a self-proclaimed "thorn" could cause defendants to use their authority to treat her unfairly, but plaintiff has not demonstrated that defendants engaged in such a pattern of behavior. Cf., Marra v. Philadelphia Housing Authority, 497 F.3d 286, 302 (3d Cir. 2007) (holding that (1) the "vandalization" of plaintiff's computer in July 2001, shortly after he testified at the *Paladino* trial against the defendant, plaintiff's employer; (2) plaintiff's exclusion from an important July 2001 meeting at which the Section 8 project was discussed; (3) the reassignment of a co-worker to the Section 8 Department, over plaintiff's objections, in July 2001; and (4) the "look of disgust" that the employee of defendant gave plaintiff upon learning, shortly after the *Paladino* trial, that plaintiff had testified against defendant, were sufficient to establish a pattern of antagonism establishing the causal link between plaintiff testifying at the trial and his position being eliminated); Morrissey v. Luzerne County Community College, 117 Fed. Appx. 809, 816 (3d Cir. 2004) (holding that plaintiff demonstrated an issue of material fact with regard to the causal element of her *prima facie* case for the claim that defendant denied plaintiff a position only six months after complaining of gender discrimination by alleging a pattern of antagonism that allegedly manifested itself in the following

15

ways: (1) she was displaced from her original office; (2)
defendant required plaintiff to be interviewed during the second
selection while on sick leave, something never before required of
a candidate; and (3) plaintiff, unlike the other candidates, was
not informed about the format of the interviews).

Based on the foregoing, plaintiff has failed to show the
causal link between the denial of the salary adjustment and her
protected activity.  Because he has failed to establish the causl
link, she has failed to establish her *prima facie* case.

Even if plaintiff did establish a *prima facie* case,
plaintiff has not demonstrated that defendants' reason for the
reprimand was a pretext, or the denial of the salary increment
was a pretext.  To demonstrate that defendants' proffered reasons
for her reprimand and denial of salary adjustment were in
retaliation for her protected activity, plaintiff must show by a
preponderance of the evidence that the employer's explanation was
merely a pretext for its actions.  To meet the standard of
proving pretext, plaintiff must point "to some evidence, direct
or circumstantial, from which a fact-finder would reasonably
either: (1) disbelieve the employer's articulated legitimate
reasons; or (2) believe that an invidious discriminatory reason
was more likely than not a motivating or determinative cause of
[the employer's] action."  Foxworth v. Pennsylvania State Police,
228 Fed. Appx. 151, 158 (3d Cir. 2007) (citing Sheridan v. DuPont

16

de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996); Fuentes, 32
F.3d at 764)).

     First, with regard to the reprimand for the email she sent
to her co-worker, defendants explain that the Sterling High
School Faculty manual provides that the school's email system is
to be used only for communications appropriate for an educational
environment, and not for personal reasons.  (Def. Ex. H.)
Defendants contend that plaintiff was reprimanded for violating
this policy, and not because of any protected activity she
engaged in prior to the date of the reprimand.  Plaintiff has not
provided any evidence to refute this reason.[2]

     Second, with regard to the denial of the salary increment,
defendants explain that the decision to withhold plaintiff's
increase for the 2006/2007 school year was a result of plaintiff
repeatedly using students' behavior in class as a criteria for
grading, which is in direct violation of the district's grading
policy.  According to defendants, in March and April 2005,
parents of two of plaintiff's students complained that plaintiff
was using discipline problems to subtract points from their final

_____

     [2]Even though plaintiff has not alleged a disparate treatment
claim with regard to the reprimand, if she did, plaintiff has not
provided any evidence that male faculty members have been treated
more favorably in similar situations.  Indeed, with regard to the
reprimand for the email, McCulley testified that male employees
have been reprimanded for improper use of the email system.
(Def. Ex. I.)

course grade.  On April 27, 2005 and on other occasions, the high school principal, David Tannenbaum, spoke with plaintiff about this issue.  (See Def. Ex. H.)  In July 2005, Tannenbaum received another complaint from one of the same parents who had complained previously, as well as a complaint from a different student's parents regarding the same issue with plaintiff's grading.  (Id.) In a July 8, 2005 letter to plaintiff, Tannenbaum expressed his concern that plaintiff was continuing to violate Board of Education Policy Number 6020, which prohibits a teacher from taking points off grades for misbehavior.  (Id.)  Tannenbaum instructed plaintiff to follow the district's grading policy, and set forth other methods to deal with behavior problems.  (Id.) Tannenbaum stated that he was "confident that these measures combined with your years of experience and the training you received . . . on motivating non-compliant and at-risk students will ensure your success."  (Id.)  Tannenbaum then instructed plaintiff to contact him so that they could set up conferences with the complaining parents.  (Id.)

Because plaintiff did not respond to Tannenbaum's letter, the parents wrote a letter to the Board of Education.  (See Def. Ex. L.)  The parents expressed concern over plaintiff's grading, as well as her teaching methods.  (Id.)  On August 15, 2005, Tannenbaum wrote plaintiff a follow-up letter.  (Def. Ex. M.)  In the letter, Tannenbaum stated that plaintiff's failure to abide

18

by the district's grading policy, even after he discussed the issue with plaintiff on several occasions, was "an act of direct insubordination." (Id.)  Tannenbaum also implored plaintiff to attend the parent conferences set up for August 19, 2005, and stated that if plaintiff did not contact him with regard to these conferences, administrative action to review plaintiff's grades would be taken.  (Id.)  Plaintiff responded on August 18, 2005 via a short memorandum stating that she would not be available to meet with the parents until September 1, 2005.  (Def. Ex. O.)

At plaintiff's request, a meeting was held on September 8, 2005 with the school administration to discuss plaintiff's grading issue.  (Def. Ex. P.)  In attendance on behalf of plaintiff was a NJEA UniServe representative and the SEA president.  (Id.)  For the school district, Tannenbaum, McCulley, and the vice-principal, Linda Rosbert, were in attendance.  (Id.)  At that meeting, Tannenbaum reiterated plaintiff's need to follow the policy, and recapped the events leading up to this point. (Id.)  Tannenbaum stated that plaintiff was insubordinate to him, and recommended the matter to the superintendent for further investigation and appropriate disciplinary action. (Id.)

After plaintiff had a meeting with McCulley on October 5, 2005, McCulley sent plaintiff a letter stating that based on his review of the situation, plaintiff's claim that she did not understand that the grading policy applied to anything other than

19

physical education classes was "disingenuous at best."  (Def. Ex.
Q.)  McCulley stated, "It would have been simple to correct by
following Mr. Tannenbaum's original directive.  Your actions in
this matter indicate that where Board policy and well-established
administrative procedures conflict with your own opinions on the
matter, your opinions will guide your professional actions.  This
approach is unacceptable."  (Id.)  McCulley stated that he
intended to recommended to the Board of Education to withhold
plaintiff's salary increment for the 2006/2007 school year.
(Id.)

Apparently, McCulley did not make this recommendation until
April 2006.  (See Def. Ex. S.)  In addition to the grading issue,
McCulley found that plaintiff had inappropriate classroom
management, which consisted of shutting down the class on
November 15 and 16, 2006.  (Id.)  Plaintiff also had the
inability to implement daily activities as required of a veteran
teacher.  (Id.)  McCulley informed plaintiff that he was going to
recommend to the Board to withhold her 2006/2007 adjustment.
(Id.)

Plaintiff has failed to provide any evidence that defendants
withheld her salary adjustment for any other reason than the one
explained in detail to her.  Plaintiff does not deny the events
described above, but rather attempts to explain the reasons for
her classroom procedures and grading method.  Plaintiff may have

20

a difference in opinion over defendants' grading policy and view of her teaching methods, but this does not demonstrate that defendants' actions were really motivated in retaliation for her protected activity.  Consequently, summary judgment must be entered in favor of defendants on plaintiff's retaliation claim.

### 2.   Whether defendants' actions "were taken on account of her gender"

In her complaint, plaintiff only makes a general allegation that defendants discriminated against her because of her gender. Plaintiff does not make any specific allegations with regard to this claim.  The parties' statement of undisputed material facts, however, set forth incidents that can be construed to be plaintiff's claims of gender discrimination.

In an affirmative action complaint filed by plaintiff on November 24, 2004, plaintiff complained of instances in which she alleged that she was "singled out as a female employee who was not treated equally and fairly with other male employees."  (Def. Ex. W.)  One incident involved certain male teachers being permitted to wear shorts, while she had to, on one occasion, go home and change.  Another incident concerned the fact that the previous year she was given a short amount of time to complete the revision of the physical education curriculum while the male teacher who was assigned the duty for the next year was given assistance and not the same tight deadline.  The final incident

involved her claim that she was not approved to go to certain workshops while male co-workers were permitted to attend.

These claims were investigated and addressed by the vice-principal, Linda Rosbert.  (See Def. Ex. X.)  The investigation revealed that two male employees were also instructed to change their clothing that day, and even though plaintiff was correct that one male employee continued to wear shorts, he was later instructed to wear pants for his non-physical education classes. The investigation also revealed that with regard to the curriculum development, plaintiff did not assume those duties the following year, and the only reason the male faculty member who assumed those duties received typing assistance--by vice-principal Rosbert--was because plaintiff had failed to submit the previous year's curriculum on a disk, and it needed to be retyped.  Finally, the investigation revealed that the reason plaintiff was denied attendance at one workshop was because she had already attended two of the three workshops offered by the district on motivating difficult/at-risk students, and because Principal Tannenbaum determined that other faculty members who had not yet attended these workshops would better benefit from the limited funds for such workshops.  (See Def. Ex. Y.)

Although not specifically pleaded in her complaint or argued in her opposition brief, these facts can be construed to allege a disparate treatment claim.  A claim of disparate treatment also

uses the McDonnell Douglass burden shifting framework.  As with
her retaliation claim, plaintiff must first prove her *prima facie*
case.  To prove a *prima facie* case of disparate treatment, a
plaintiff must offer sufficient evidence that she was: (1) a
member of a protected class, (2) qualified for the position, and
(3) nonmembers of the protected class were treated more favorably
than her.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d
313, 318-19 (3d Cir. 2000) (citing Ezold v. Wolf, Block, Schorr
and Solis Cohen, 983 F.2d 509, 522 (3d Cir. 1993)).

    If Plaintiff establishes a *prime facie* case, a presumption
of discrimination is created and the burden of production shifts
to the defendant to articulate some legitimate, nondiscriminatory
reason for its actions.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d
Cir. 1994).  Once the employer answers its relatively light
burden by articulating a legitimate, nondiscriminatory reason for
the unfavorable employment decision, the burden of production
rebounds to the plaintiff, who must now show by a preponderance
of the evidence that the employer's explanation was merely a
pretext for its actions, thus meeting the plaintiff's burden of
persuasion.  Goosby, 228 F.3d at 319 (citing Reeves v. Sanderson
Plumbing Products Inc., 530 U.S. 2097 (2000)).

    Here, the evidence on the record does not demonstrate that
plaintiff was treated differently because she is a woman.  First,
when she wore shorts to non-physical education classes and

meetings, she was sent home to change, just like men who wore shorts.  Plaintiff has not disputed this evidence.  Second, just because a male faculty member received typing assistance on a curriculum development project when plaintiff did not receive assistance, plaintiff has not provided any evidence establishing that she did not receive such assistance because she is a woman. Moreover, even if this were to be considered disparate treatment, plaintiff has not refuted the reason for why the male faculty member received typing assistance.[3]  Finally, plaintiff has not provided any evidence that male co-workers were approved to go to the workshops plaintiff was denied.  Further, even if male faculty members did attend those workshops, plaintiff has not disputed the reasons given by the principal for why she was not approved.

Consequently, summary judgment must be entered in favor of defendants on any disparate treatment claim by plaintiff.

**CONCLUSION**

---

[3]Ironically, on the one hand plaintiff contends that the male employee receiving Ms. Rosbert's typing assistance was evidence of gender discrimination against her, while on the other hand, plaintiff claims that Ms. Rosbert being assigned "more duties than a similarly situated male vice-principal" was evidence of gender discrimination against Ms. Rosebert.  (See Pl.'s Additional Statement of Facts, ¶ 10.)

24

For the reasons expressed above, defendants are entitled to summary judgment on plaintiff's gender discrimination claims alleged in Count Four of plaintiff's complaint.  An appropriate Order will issue.


Dated:     March 19, 2008          s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.